UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BETH L. LENOBLE, | : | DN. 02-CV-1673 (DJS) |
| Plaintiff, | : | |
| V. | : | |
| BEST TEMPS, INC., PHOTOS TEMPS, INC., and ROBERT J. ROSA, | : | |
| Defendants. | : | November 20, 2003 |

**MEMORANDUM IN OPPOSITION TO
MOTION OF DEFENDANT PHOTOS TEMPS,
INC., FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff Beth L. Lenoble respectfully submits this memoran-
dum in opposition to the motion of defendant Photos Temps, Inc.
("Photos Temps"), dated Sept. 12, 2003, for summary judgment on
all counts (DN 53).  The motion should be denied because resolu-
tion of the factual issues raised by defendants' motion is for
the jury after a trial.

## II.  FACTS

The facts material to the motion for summary judgment are summarized below.  Immaterial facts are omitted.

While Plaintiff worked for Defendants Best Temps and Photos Temps, Jeff Soss, the controller, told her that the companies shared policies, procedures, financing and management.[1]

The companies were run together by Defendant Rosa and Richard Photos.  They had clerical people who worked on both companies and a single financial person who handled all of the money, bank accounts and the like for both companies.  While plaintiff was there that person was Anthony Osias.  Mr. Osias said that Defendant Rosa allocated expenses between the companies and had him move money between company accounts, not according to the name on the account, but according to his convenience.  Mr. Osias said that Defendant Rosa had some of Osias' expenses

---

[1]    See Plaintiff's Responses, dated Oct. 2, 2003, to Defendants' Second Set of Discovery Requests, hereinafter "Pl. 2d Responses," at Int. 5.  An affidavit of William B. Barnes, Esq., verifying documents is attached as Ex. 1 to Plaintiff's Rule 56(a)2 Statement, hereinafter "Pl. R. 56(a)2 Statement."  A true and accurate copy of Pl. 2d Responses, Int. 5, is attached as Ex. 2 to Pl. R. 56(a)2 Statement.

charged to a Photos Temps account though he nominally worked for Best Temps.[2]

An Aug. 9, 2002 police report containing information supplied by Defendant Rosa, Richard Photos, and an employee named Christian Collins refers to Richard Photos and defendant Rosa as "the two owners" of the businesses and says "The business [sic] are both run out of the same office and share the same office personnel." Throughout the report Richard Photos and defendant Rosa are referred to as "the owners." [3]

The Aug. 10, 2002 sworn statement of defendant Rosa in support of his complaint refers to "our weekly payroll" and refers to the payroll account of "Photos Temps dba Best Temps." Defendant Rosa also referred to a "First Temps dba Best Temps" payroll account, a "Best Temps, Inc.," payroll account and a "Photos Temps, Inc.," payroll account. Throughout the statement it is clear that Mr. Osias handled all of these accounts.[4]

---

[2]    Pl. 2d Responses, at Int. 5.

[3]    A true and accurate copy of the Monroe Police Report is attached as Ex. 3 to Pl. R. 56(a)2 Statement.

[4]    A true and accurate copy of Defendant Rosa's statement is attached as Ex. 4 to Pl. R. 56(a)2 Statement.

Richard Photos, in his Aug. 10, 2002 sworn statement to the Monroe Police, refers to "our weekly payroll", meaning defendants Photos Temps and Best Temps.  Later he refers to the "Photos Temps Payroll Account" and the "First Temps Payroll Account" According to defendant Rosa, Mr. Osias had and used a rubber stamp of Richard Photos' signature.[5]

There were Defendant Photos Temps employees in the Monroe office of defendant Best Temps where plaintiff worked.  Defendant Rosa and Richard Photos worked together on a very intimate basis.  Plaintiff saw them.  They talked so often, about so many things, pertaining to both businesses, that at least while Plaintiff was there she thought that they were partners.  They acted like partners, although from what Plaintiff could see defendant Rosa was not always straightforward with Richard Photos, or fair to him.[6]

Defendant Rosa and Richard Photos decided which customers should be called upon by which recruiters.  The idea that each company was independent and had a separate territory was not

---

[5]    Pl. 2d Responses, at Int. 5.  A true and accurate copy of Richard Photos' statement is Ex. 5 to Pl. R. 56(a)2 Statement.

[6]    Pl. 2d Responses, at Int. 5.

4

respected.  Defendant Rosa did not distinguish between the

customers of Defendant Best Temps and the customers of Defendant

Photos Temps.  Plaintiff received a list of customers to call on

from Defendant Rosa which contained customers supposedly assigned

to Defendant Photos Temps.  Richard Photos got mad at Plaintiff

for calling on those customers.  Jeff Soss explained to Richard

Photos, in Plaintiff's presence, that Plaintiff was only doing

what Defendant Rosa told her to do.  Defendant Rosa calmed down

and admitted that he had to talk to Defendant Rosa about that.[7]

A Dun and Bradstreet Business Report on Defendant Photos

Temps, obtained July 16, 2002, says that Defendant Photos Temps

has a branch at 477 Main St., Monroe, Connecticut.[8]  This is the

Defendant Best Temps office where plaintiff worked.[9]  The same

report says that the headquarters location of Defendant Best

Temps is 75 Twining St., Bristol, Connecticut, the main office of

Defendant Photos Temps in Bristol, and says that the top execu-

---

[7]    Pl. 2d Responses, at Int. 5.

[8]    A true and accurate copy of the D & B report is attached
as Ex. 6 to the Pl. R. 56(a)2 Statement.

[9]    Pl. 2d Responses, at Int. 5.

tive of Defendant Photos Temps and Defendant Best Temps is Richard Photos.[10]

Photos Temps erroneously states that Plaintiff filed a CCHRO charge against Best Temps alone.[11]  Photos Temps concludes that Plaintiff knew that her employer was Best Temps and later alleged that Photos Temps was her employer for tactical reasons.[12]  But Plaintiff's first charge of discrimination named Photos Temps as a respondent employer.[13]  The Commission on Human Rights declined to process a single charge naming three respondents, so Plaintiff filed three charges, each naming a different respondent.[14]  One of those charges named Photos Temps as a respondent.[15]

## II.  ARGUMENT

### A.  Count One States a § 1981 Claim Against Defendant Photos Temps

---

[10]    Pl. 2d Responses, at Int. 5 and Pl. R. 56(a)2 Statement, Ex. 6.

[11]    Photos Temps Memo, at 9 & Rule 56(a)1 Statement, Ex. F.

[12]    Photos Temps Memo, at 9.

[13]    See Barnes Aff., ¶ 2 & Ex. 7 to Pl. R. 56(a)2 Statement.

[14]    Barnes Aff., ¶ 3.

[15]    Barnes Aff., ¶ 3 & Ex. 7 to Pl. R. 56(a)2 Statement.

6

Defendant Photos Temps argues that Plaintiff has no § 1981 claim against it because it was not her employer.  This argument has no merit.

To state a cause of action under 42 U.S.C. § 1981, a plaintiff must allege membership in a racial minority group; an intent to discriminate on the basis of race by the defendants; and discrimination concerning one or more of the activities enumerated in the statute.  See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

Section 1981 (c) refers to "impairment" of rights by "discrimination."  Rights may be impaired by discriminatory acts engaged in by persons other than an employer.  In Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291 (1988), the Eleventh Circuit held that a training hospital which interfered with a doctor's employment could be sued under § 1981 despite the absence of a direct employment relationship.  "Nothing in the language of section 1981 suggests that it should be limited to situations where the parties occupy a direct employment relationship. Indeed, its language suggests just the opposite."  Id. at 295. Accord, Daniels v. Pipefitters' Assn. Local Union No. 597, 945 F.2d 906, 914-915 (7th Cir. 1991) (racially discriminatory

referral service that impeded plaintiff's ability to enter into
employment contracts violated § 1981); Shirkey v. East Wind
Community Development Corp., 941 F.Supp. 567 (D. Md. 1996) (upper
level church organizations responsible for racially discrimina-
tory policy which limited plaintiff's employment opportunity
liable under § 1981 though they were not employer); Vakharia v.
Swedish Covenant Hospital, 765 F. Supp. 461, 471 (N.D.Ill. 1991)
(plaintiff's § 1981 claim against a hospital was actionable where
the hospital allegedly reduced the quantity and quality of
plaintiff's anesthesiology caseload on the basis of race, inter-
fering with plaintiff's ability to make contracts with prospec-
tive patients).  Similarly, the officers, directors and employees
of a corporate employer may be liable under § 1981, though they
are not themselves the employer, and the employer may not be
liable.  See Whidbee v. Garzarelli Food Specialties, Inc., 223
F.23d 62, 74-76 (2d Cir. 2000); Northup v. Connecticut Commission
on Human Rights and Opportunities, Civ. No. 3:97-211 (DJS), 1998
U.S. Dist. LEXIS 3111 (D. Conn. Feb. 2, 1998).  Defendant Photos
Temps could be found liable if the jury did not find it to be
Plaintiff's employer.

    **2.   Defendant Photos Temps Could Be**
           **Held Plaintiff's "Employer"**
           **Under Title VII & the CFEPA on a**
           <u>**Single or Joint Employer Theory**</u>

The jury could find Defendant Photos Temps liable as the entity, or one of the entities, responsible for the Title VII and CFEPA violations under either a single or a joint employer theory.

Title VII, in relevant part, prohibits employment discrimination by an "employer." <u>See</u> 42 U.S.C. § 2000e-2(a). Courts construe Title VII's definition of "employer" liberally so that a direct employment relationship is not required. <u>Farulla v. New York School Constr. Auth.</u>, 277 F.Supp.2d 140, 143 (E.D.N.Y. 2003); <u>Gryga v. Ganzman</u>, 991 F. Supp. 105, 108 (E.D.N.Y. 1998). "'This term [employer] has been construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment.' <u>E.E.O.C. v. Sage Realty Corp.</u>, 507 F. Supp. 599, 611 (S.D.N.Y. 1981)." <u>Gryga</u>, 991 F. Supp. at 108.

> [W]here two entities "'have an integrated economic relationship and exercise common control over employment practices' that affect an employee, each may be held liable for the other's discriminatory acts and

9

policies as an integrated enterprise." <u>Dortz</u> [<u>v. City</u>
<u>of New York</u>, 904 F. Supp. 127 (S.D.N.Y. 1995)], 904 F.
Supp. at 145 (quoting <u>Streeter v. Joint Industries</u>
<u>Board of Elec. Indus.</u>, 767 F. Supp. 520, 527 (S.D.N.Y.
1991)).  And, "even where there is not an integrated
enterprise or joint employer relationship, entities may
be 'simultaneous' employers where they control the
economic realities of the employment relationship with
the employee and the means and manner of the worker's
performance." <u>Dortz</u>, 904 F. Supp. at 145 (citing
<u>Amarnare</u> [<u>v. Merrill Lynch, Pierce, Fenner & Smith,</u>
<u>Inc.</u>, 611 F. Supp. 344 (S.D.N.Y. 1984)], 611 F. Supp.
344 at 347-48; <u>Goyette v. DCA Advertising, Inc.</u>, 830 F.
Supp. 737, 744 (S.D.N.Y. 1993)).

<u>Gryga</u>, 991 F. Supp. at 108.  Put another way, the test for

whether a particular entity is an employer is whether it "exer-

cise[s] a direct and significant degree of control over the

complaining party's direct employer or the complaining party's

work environment." <u>Goyette</u>, 830 F. Supp. at 744 (quotations

omitted).  The term employer is "sufficiently broad [so as] to

encompass any party who significantly affects access of any

individual to employment opportunities." <u>Spirt v. Teachers</u>

<u>Insurance & Annuity Ass'n</u>, 691 F.2d 1054, 1063 (2d Cir. 1982),

<u>vacated on other grounds</u>, 463 U.S. 1223, 103 S. Ct. 3565, 77 L.

Ed. 2d 1406 (1983); <u>Reiter v. Metro. Transp. Auth.</u>, 01 Civ. 2762

(JGK), 2002 U.S. Dist. LEXIS 18537, *12-*13 (S.D.N.Y. 2002).

Judge Chatigny followed this line of cases in the recent decision <u>Pompeii v. Alexander Mfg., Inc.</u>:

> Title VII primarily covers relations between employees and their employers or their employers' agents, not between employees and third parties. <u>Los Angeles, Dep't of Water & Power v. Manhart</u>, 435 U.S. 702, 718, 55 L. Ed. 2d 657, 98 S. Ct. 1370 (1978). However, the term "employer," as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects the access of any person to employment opportunities, regardless of whether that party is the "employer" of the person as that term has been defined at common law. <u>Spirt v. Teachers Ins. & Annuity Ass'n</u>, 691 F.2d 1054, 1063 (2d Cir. 1982); <u>see also</u> <u>Sibley Memorial Hospital v. Wilson</u>, 160 U.S. App. D.C. 14, 488 F.2d 1338, 1340-42 (D.C. Cir. 1973). A defendant can be considered a plaintiff's "employer" if the plaintiff alleges that the defendant had authority to hire or fire the plaintiff, to supervise her work or conditions of employment, to determine her rate or method of pay, to maintain records of her employment, or at a minimum, to affect her employment with her direct employer in some way. <u>Kern v. City of Rochester</u>, 93 F.3d 38, 45 (2d Cir. 1996).

NO. 3:03CV1170 (RNC), 2003 U.S. Dist. LEXIS 20317, *2-*3 (Nov. 7, 2003).

Plaintiff has alleged sufficient facts to show that Richard Photos, and hence Defendant Photos Temps, exercised a significant degree of control over her direct employer, Best Temps, and over her work environment. Defendant Rosa and Richard Photos ran the businesses together. The corporate documents, licensing agree-

11

ments and conclusory affidavits relied upon by Defendant Photos
Temps do not conclusively determine the critical issue of day-to-
day operations.  Defendants say that there was no control and no
interrelationship.  Plaintiff says that there was.  Plaintiff has
presented statements by Defendant Rosa and Richard Photos to the
Monroe police, and Dun & Bradstreet reports, which paint a very
different picture.

Defendants mechanically apply the four part test of <u>Cook v.</u>
<u>Arrowsmith Shelburne, Inc.</u>, 69 F.3d 1235, 1241 (2d Cir. 1995).
These tests cannot, however, be mechanically applied to companies
so small that they consist of two owners, Defendant Rosa and
Richard Photos, supervising a few sales people.  The true ques-
tion is whether Richard Photos and Defendant Rosa ran their
operation as one enterprise and thus whether Richard Photos
exercised a significant degree of control over Plaintiff's work
environment.

In <u>Peltier v. Apple Health Care, Inc.</u>, 130 F. Supp. 2d 285,
288-290 (D. Conn. 2000), this court denied a motion for summary
judgement in which the defendants made arguments similar to those
made by Photos Temps.  This court found that the relationship

between the related companies involved too many issues of fact to permit summary disposition.

    **C.    Count Eight States a**
                 **Respondeat Superior Claim**
                 **Against Defendant Photos Temps**

Defendant Photos Temps' motion for summary judgment on Count Eight must be denied because whether Defendant Best Temps and Defendant Photos Temps intended to have an agency relationship is a question of fact which cannot be resolved on summary judgment.

The existence of an agency relationship is a question of fact. Fuessenich v. DiNardo, 195 Conn. 144, 159, 487 A.2d 514 (1985); Beckenstein v. Potter & Carrier, Inc., 191 Conn. 120, 133, 464 A.2d 6 (1983); Botticello v. Stefanovicz, 177 Conn. 22, 26, 411 A.2d 16 (1979), Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 124, 374 A.2d 144 (1976); Cleaveland v. Gabriel, 149 Conn. 388, 394, 180 A.2d 749 (1962).[16] Questions concerning the creation of an agency relationship are also ones of fact. Frigon v. Enfield Savings & Loan Assn., 195 Conn. 82, 85, 486 A.2d 630 (1985). The only exception to these rules is when the party

---

[16]    Plaintiff agrees with Defendants that whether an agency relationship existed for the purposes of the state law claims is a question of state law.

seeking to prove agency says that the relationship was created solely by a written instrument.  See Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 184, 544 A.2d 1185 (1988) (court could determine agency since plaintiff's only basis for claim was statutory relationship between city and housing authority); Narumanchi v. Mechanics Sav. Bank, CV 000434264, 2000 Conn. Super. LEXIS 2502, *11-*12 (Sept. 20, 2000) (court could deter-mine agency since plaintiffs' only basis for claim was clause in mortgage deed).  "[T]he labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the operative terms of their agreement or understanding." Beckenstein, 191 Conn. at 134; First Charter Nat'l Bank v. Ross, 29 Conn. App. 667, 673, 617 A.2d 909 (1992).

In this case the party seeking to prove agency, the Plain-tiff, relies on the operative terms of the agreement and under-standing between Defendant Rosa and Richard Photos, acting for Defendant Photos Temps, as shown by their conduct, not on the labels they gave themselves in the License Agreement and other documents.  See Tomka v. Seiler, 66 F.3d 1295, 1306-07 (2d Cir. 1995) (existence of agency relationship binding employer a question of fact barring summary judgment); Union Trust Co. v.

14

<u>Jackson</u>, 42 Conn. App. 413, 419, 679 A.2d 421 (1996) ("Generally, issues involving motive or intent are not properly resolved on a motion for summary judgment.").

**D.    Count Nine States a**
**Joint Enterprise Claim**
**<u>Against Defendant Photos Temps</u>**

A joint venture, also referred to as a joint adventure or joint enterprise, exists where two or more parties combine their property, money, efforts, skill or knowledge in some common undertaking. <u>Doe v. Yale Univ.</u>, 252 Conn. 641, 672, 748 A.2d 834 (2000); <u>Roberts v. Weiner</u>, 137 Conn. 668, 671, 81 A.2d 115 (1951); <u>Lesser v. Smith</u>, 115 Conn. 86, 89, 160 A. 302 (1932); <u>Dolan v. Dolan</u>, 107 Conn. 342, 349, 140 A. 745 (1928). Whether the relationship between two parties is a joint venture is a question of intent. <u>Doe</u>, 252 Conn. at 641; <u>Electronic Assoc., Inc. v. Automatic Equip. Development Corp.</u>, 185 Conn. 31, 35, 440 A.2d 249 (1981). The relations and obligations of a joint venture in general are those which govern a partnership, <u>see Travis v. St. John</u>, 176 Conn. 69, 73, 404 A.2d 885 (1978); <u>Roberts</u>, 137 Conn. at 670-73; <u>Lesser</u>, 115 Conn. at 89, though the mutual agency characteristic of partnerships is not required in joint ventures. <u>See Dolan v. Dolan</u>, 107 Conn. at 349 ("there is

15

not the relation of principal and agent in joint adventure which
we find in a partnership"). The absence of a profit motive is
not fatal to the existence of a joint enterprise. <u>Doe</u>, 252 Conn.
at 677.

"Whether a joint venture exists depends on the facts of each
case. <u>Electrical Contractors, Inc. v. Goldberg & O'Brien Elec.
Co.</u>, 29 Ill. App. 3d 819, 331 N.E.2d 238, 241 (Ill. App. 1975)."
<u>Alletto v. General Dynamics Corp.</u>, 525391, 1995 Conn. Super.
LEXIS 2014, *3-*4 (July 7, 1995) (issues of fact as to the intent
of the parties which allegedly formed a joint venture prevent
summary judgment).

Plaintiff has stated facts from which this court could
conclude that Defendants Rosa, Best Temps and Photos Temps
through Richard Photos formed a joint venture. Whether that was
their intent is a question of fact barring summary judgment.

  **E.** **Count Ten States a**
    **Partnership Claim Against**
    **Defendant Photos Temps**

Summary judgment procedure is particularly inappropriate
where the inferences which the parties seek to have drawn deal
with questions of motive, intent and subjective feelings and
reactions. <u>Connell v. Colwell</u>, 214 Conn. 242, 251, 571 A.2d 116

(1990). The question of whether a partnership exists between particular persons is a mixed question of law and fact. <u>Brookfield Assoc. v. Estate of Marguerite Bacon</u>, No. 30 01 38, 1993 Conn. Super. LEXIS 561, *15-*16 (Mar. 8, 1993), <u>citing</u> 59A Am. Jur. <u>Partnership</u>, § 210 (1987). What constitutes a partnership under established facts is a question of law for the court, but the existence of the facts necessary to bring the relation within the tests of partnership, or the determination whether a partnership exists under the evidence and the inferences reasonably drawn from the evidence, is a question of fact for the jury. <u>Id.</u>

Plaintiff has stated facts from which this court could conclude that Defendants Rosa, Best Temps and Photos Temps through Richard Photos ran their business as a partnership. Whether that was their intent is a question of fact barring summary judgment.

**III. CONCLUSION**

For all of the forgoing reasons Plaintiff respectfully asks that the motion of Defendant Photos Temps for summary judgment be denied.

17

THE PLAINTIFF
BETH L. LENOBLE


BY: _____

WILLIAM B. BARNES, ESQ.
(CT0268)
Rosenstein & Barnes
1100 Kings Hwy. East
P.O. Box 687
Fairfield, CT 06432
Tel (203) 367-7922
Fax (203) 367-8110
E-mail wbarnes@rosenbar.com

**CERTIFICATION**

A copy of the foregoing was mailed first class mail, postage prepaid, on November 21, 2003, to the following persons:

Giovanna T. Weller, Esq.
Carmody & Torrance, LLC
50 Leavenworth St.
Waterbury, CT 06721


_____

WILLIAM B. BARNES, ESQ.

18

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BETH L. LENOBLE, | : | DN. 02-CV-1673 (DJS) |
| *Plaintiff*, | : | |
| V. | : | |
| BEST TEMPS, INC., PHOTOS TEMPS, INC., and ROBERT J. ROSA, | : | |
| *Defendants*. | : | November 21, 2003 |

## AFFIDAVIT

Now Comes WILLIAM B. BARNES, ESQ., who having first been duly sworn, does hereby depose and say:

1.   I am over the age of eighteen years and understand the obligation of an oath.  I make this affidavit of my own personal knowledge.  I am counsel for the Plaintiff herein.

2.   A true and accurate copy of the Oct. 2, 2003, answer by Plaintiff to Int. 5 of Defendants' Second Set of Discovery Requests is Ex. 2 to Plaintiff's Rule 56(a)2 Statement ("Pl. R. 56(a)2 Statement").

3.   A true and accurate copy of a Monroe Police Report subpoenaed by Plaintiff from the Monroe Police Department is attached as Ex. 3 to Pl. R. 56(a)2 Statement.

4.    A true and accurate copy of Defendant Rosa's statement to the Monroe Police, obtained by Plaintiff from the Monroe Police. is attached as Ex. 4 to Pl. R. 56(a)2 Statement.

5.    A true and accurate copy of Richard Photos' statement to the Monroe Police, obtained by Plaintiff from the Monroe Police. is attached as Ex. 5 to Pl. R. 56(a)2 Statement.

6.    A true and accurate copy of a Dunn & Bradstreet Report, dated July 16, 2002, is attached as Ex. 6 to Pl. R. 56(a)2 Statement.    I obtained this report myself.

7.    A true and accurate copy of the CCHRO charge filed by Plaintiff against Defendant Photos Temps is attached as Ex. 7 to Pl. R. 56(a)2 Statement.

8.    My affidavit has 8 paragraphs and 3 pages.

_____

WILLIAM B. BARNES, ESQ.

STATE OF CONNECTICUT    )
                        )    SS: TOWN OF FAIRFIELD
COUNTY OF FAIRFIELD     )

Personally appeared WILLIAM B. BARNES, ESQ., known or satisfactorily proven, before me on November 21, 2003, and

2

subscribed and swore to the truth of the foregoing as his free
act and deed for the purposes therein contained.

NOTARY PUBLIC
My commission expires: 12/31/03

3