35899
?7 WL 135899 (N.D.N.Y.))

Page 1

... Westlaw citation is currently available.

United States District Court,
N.D. New York.

Joan DeLaTORRE, Plaintiff,
v.
The TOWN of MARLBOROUGH, Defendant.

No. 95-CV-1262.

March 13, 1997.

Law Office of Thomas P. Halley (Thomas P. Halley, of counsel), Poughkeepsie, NY, for Plaintiff.

McCabe & Mack (David L. Posner, of counsel), Poughkeepsie, NY, for Defendant.

MEMORANDUM, DECISION & ORDER

McAVOY, Chief District Judge.

*1 This action alleging retaliatory discharge and gender discrimination arises out of plaintiff Joan DeLaTorre's employment with the Police Department of the defendant Town of Marlborough ("defendant," or "Town"). Plaintiff brings the action pursuant to 42 U.S.C. § 1983, claiming violations of her rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution. Presently before the Court is defendant's motion for summary judgment.

I. BACKGROUND

A. Facts: [FN1]

> FN1. These facts are drawn from excerpts of plaintiff's deposition (submitted by defendant) and from the affidavits submitted by defendant. Furthermore, virtually all of the facts contained in defendant's Local Rule 7.1(f), with proper citations to the record, are deemed admitted on this motion, since they are not specifically denied in plaintiff's Local Rule 7.1(f) statement. See Local Rule 7.1(f).

*Factual Background Regarding the Equal Protection Claims*

Plaintiff was hired by the Town of Marlborough as confidential police secretary in 1986. (Pl. Dep. at 41). At the time, the position was exempt from Civil Service and entailed a 30-hour work week. (*Id.*). Plaintiff had no other employment at the time.

In November of 1987, plaintiff became a part-time police officer [FN2] in the Town Police Department in addition to her position as police secretary. (Pl. Dep. at 42; Affidavit of Town Supervisor Kevin Casey ["Casey Aff."], ¶ 2). When she initially took on the additional position, her hours remained the same on the secretarial position. Due to the two positions plaintiff held at this point, she was entitled to overtime pay when her part-time duties exceeded 10 hours per week.

> FN2. In her Complaint, plaintiff alleges that during 1993, she was the only certified female police officer employed by the Town. (Compl. ¶ 9). While plaintiff may have been the only *certified* female officer on the force at that time, another female part time officer joined the force in January of 1993. (Wenz Aff. ¶ 17; Pl. Dep. at 65). Additionally, Wenz asserts that
>
> Prior to [1993] a third female was on the force as a part-time officer, but she resigned and joined the police force in another jurisdiction. Furthermore, a fourth female was hired to commence work as a part-time officer in January, 1993 and two other female police officers were also offered jobs, but one withdrew her application prior to the start date and the second was a now show on her first day of work.
>
> (Wenz Aff., ¶ 17). Plaintiff does not dispute these assertions.

Effective January 1, 1993, plaintiff's hours as police secretary increased from thirty to thirty-five hours per week. (Def.Ex. B). Due to this increase, plaintiff was now entitled to overtime when her police duties exceeded five hours per week. (Pl. Dep. at 45; Affidavit of Town Police Chief Richard Wenz ["Wenz Aff."], ¶¶ 5-7). Nonetheless, from

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1997 WL 135899
(Cite as: 1997 WL 135899 (N.D.N.Y.))

Page 2

January 1, 1993 through August 30 of that year, plaintiff earned 79.5 hours of overtime--over three times as much overtime earned by any other part time police officer during the same period. (Affidavit of Town Bookkeeper Cherie Martin ["Martin Aff."], ¶ 2). Plaintiff contends, however, that from the time of Chief Wenz's appointment in January of 1991, her overtime hours were restricted, and she received less overtime than any other part-time police officer. (Pl. Dep. at 46). [FN3]

> FN3. Plaintiff worked overtime in two different capacities. First, as a court officer in the Town Justice Court, as of June of 1991, plaintiff was guaranteed a minimum of three hours per court night. (Def.Ex. L). As of January of 1992, this guarantee was increased to four hours per night. (Id.). Plaintiff would work as a court officer approximately two nights per week, (Pl. Dep. at 48), but contends that such work was reduced to one night per week in May of 1993. (Id. at 60). In addition, plaintiff would get eight-hour patrol assignments, such as a DWI shift or DWI patrol. (Id. at 50). In a "normal" month, plaintiff asserts that she would work these shifts once or twice per month; by July of 1993, however, plaintiff alleges that such assignments disappeared. (Id. at 53). Defendant's submissions, however, indicate that plaintiff continued to work DWI patrols in May through August of 1993, an assertion that plaintiff does not dispute. (Def. Ex. Q; compare Def. Rule 7.1(f) statement, ¶ 18, with Pl. Rule 7.1(f) statement).
> Defendants further allege that the Town Board instructed Wenz that, due to budgetary constraints, plaintiff's overtime had to be minimized. (Casey Aff., ¶ 14; Def. Ex. B).

Effective August 9, 1993, plaintiff's title was changed from confidential police secretary to Police Assistant, with a corresponding change to Civil Service status. (Casey Aff., ¶ 15; Pl. Dep. at 43). Her duties, however, remained the same. (Id.). That same day, however, the Town Board adopted a resolution that prohibited a full-time employee of the Town from simultaneously holding a part-time Town position, at least in part due to fiscal concerns regarding the amount of overtime worked by plaintiff. (Def. Ex. E; Casey Aff. ¶ 15). On August 10, plaintiff was notified by Wenz that she must choose which position she would hold. Thereafter, on August 23, 1993, plaintiff commenced a New York C.P.L.R. Article 78 proceeding in New York State Supreme Court, Ulster County, seeking annulment of the August 9 resolution. [FN4] That petition was dismissed by letter decision dated October 28, 1993. [FN5] (Def.Ex. F). On November 4, 1993, Wenz contacted plaintiff, indicating that he understood that she wished to retain her job as Police Assistant, and ordered her to turn in her badge. (Pl.Ex. E).

> FN4. Plaintiff also filed a petition with the New York State Public Employees Relation Board ("PERB"), alleging that the Town had improperly failed to allow plaintiff to join a bargaining unit. (Def.Ex. O). That petition was dismissed for failure to prosecute January 23, 1995. (Id.).

> FN5. In his letter decision, Justice Joseph P. Torraca found that plaintiff's papers had "set forth no proofs which might establish that Respondent acted unlawfully or in an arbitrary or capricious manner or that its actions constituted an abuse of discretion." (Def.Ex. F).

*2 At some point in 1993, plaintiff became aware of a proposal, introduced by members of the Town Board, to wholly eliminate the Town Police Department and have its functions taken over by the state police. (Pl. Dep. at 68; Def. Ex. C). Rather than adopt such a radical measure, however, Casey asserts that the Board voted in favor of less drastic fiscal measures. One such measure was the adoption of a 1994 police department budget of $355,599, which was $115,000 less than the prior year. (Casey Aff. ¶ 5; Def. Ex. D, 1994 Town Budget at 2). This reduction was accompanied by a corresponding reduction of approximately $210,000 in the overall Town budget for 1994 over 1993. (Id.). Plaintiff does not dispute these facts.

Casey further asserts that one of the positions not funded in the 1994 budget, for cost-saving

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

purposes, was plaintiff's Police Assistant job. Casey contends that since this position was not involved in the direct delivery of police services to the community, it was less essential than other police positions. Wenz expressed such sentiments in a November 1, 1993 memorandum to the Town Board, specifically noting that many of the Police Assistant's duties were already, or could be, handled by other employees. (Pl.Ex. F). The budget was adopted, and as a result, on December 27, 1993, plaintiff was notified by Casey that her Police Assistant job was eliminated effective January 1, 1994. (Pl.Ex. G). That position has remained unfunded since that time. (Casey Aff. ¶ 7).

*Factual Background Regarding the First Amendment Claim*

During the relevant period of plaintiff's employment with the Town, she was a member of the local Policemen's Benevolent Association ("PBA"). At a PBA meeting held October 15, 1992, it was determined that the PBA's former Treasurer, Sergeant Frank Milazzo, had withdrawn and utilized PBA funds for personal use while in office, without the permission of the PBA membership. (Def. Ex. I at 1). A further determination was made that such conduct was actionable under the New York State Penal Law. (*Id.* at 2). Thus, a vote was taken at the meeting to determine whether criminal charges should be filed against Milazzo; 12 members voted against such a measure, and two voted in favor. (*Id.*). Plaintiff was one of the two who voted in favor. (Pl. Dep. at 89-90). As a result of the vote, the PBA did not bring criminal charges against Milazzo. Later in the meeting, plaintiff voted for Milazzo's resignation from the force, but such punishment was defeated in favor of assessment of penalties and interest, along with resignation from the PBA. (Def. Ex. I at 2; Pl. Dep. at 90).

At a meeting approximately two weeks later, the PBA membership adopted plaintiff's suggestion that Milazzo be assessed the prevailing interest rate on a personal loan and the prevailing interest rate on the PBA savings account during the time the money was withdrawn. (Def.Ex. J). Plaintiff contends that after Milazzo thumbed his nose at the PBA's measures, the PBA considered rescinding the decision not to press criminal charges, but such action was never taken. (Pl. Dep. at 93). According to plaintiff, the district attorney would not prosecute without an audit, and the vote by the PBA to perform an audit failed. (*Id.*).

*3 Disciplinary charges were brought by the Town against Milazzo. Such charges were resolved when he tendered his resignation on September 30, 1993 at the opening of the first day of hearings on the charges. (Casey Aff. ¶ 24).

In her Complaint, plaintiff alleges that as a result of her expressing her opinion regarding what she believed was criminal conduct on Milazzo's part, she was subject to the retaliatory actions which also form the basis of her equal protection claims. (Compl.¶¶ 35-41). Such retaliation, plaintiff contends, was part of a conspiracy on the part of the Town employees to retaliate against her in violation of her First Amendment Rights.

B. Procedural History:

Plaintiff commenced this action by filing a Complaint on September 5, 1995. The Complaint contains three counts, all brought pursuant to 42 U.S.C. § 1983. The first count alleges that through sexually harassing and discriminatory actions, defendant deprived plaintiff of her equal protection rights under the Fourteenth Amendment. Count Two alleges that such acts were part of a custom or policy of defendant. Count Three alleges that the same discriminatory actions were taken in retaliation for plaintiff's exercise of her First Amendment rights regarding the Milazzo affair.

Defendant answered the Complaint on January 25, 1996, and moved for summary judgment on December 23, 1996.

II. DISCUSSION

A. Defendant's Motion for Summary Judgment.

The Court now turns to defendant's motion for summary judgment.

(1) The Standard for Summary Judgment.

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

Once the moving party has met its burden, the non-moving party must come forward with *specific facts* showing that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 585-86. A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Matsushita,* 475 U.S. at 586).

*4 It is with these considerations in mind that the Court addresses defendant's motion for **summary judgment**.

(2) Equal Protection
42 U.S.C. § 1983 provides, in pertinent part, that Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
Sex-based discrimination, including sexual harassment, is actionable under § 1983 as a violation of the Equal Protection Clause. *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996); *Annis v. County of Westchester,* 36 F.3d 251, 254 (2d Cir.1994).

(a) Sexual Harassment

"To sustain an equal protection claim of sexual harassment, a plaintiff must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens." *Wise v. New York City Police Dep't,* 928 F.Supp. 355, 367 (S.D.N.Y.1996). The only indication as to the basis of plaintiff's sexual harassment claim is her attorney's unsworn **responses** to defendant's **interrogatories**, which allege that plaintiff was subject to a number of instances of offensive conduct. (Pl.Ex. A, **Response** # 7). The Court concludes from these **responses** that plaintiff alleges hostile work environment sexual harassment.

To establish a claim for hostile work environment sexual harassment, plaintiff fundamentally must show "that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment ...". *Murray v. New York University College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995). It is unnecessary to expound further on this standard, since, as a threshold matter, plaintiff offers no cognizable factual material to substantiate her allegations of sexual harassment. No instances of such harassment can be found in the Complaint. Moreover, in **response** to this motion, the only "**evidence**" plaintiff offers of the occurrence of any such harassment is her attorney Thomas Halley's unsworn answers to defendant's **interrogatories**. (See Pl.Ex. A, **Response** # 7).

Procedurally, on a motion for **summary judgment**, Fed.R.Civ.P. 56(e) requires that "*sworn* copies of all papers ... referred to in an affidavit shall be attached thereto ...". Furthermore, Fed.R.Civ.P. 33 provides that **interrogatories** are to be answered "by the party served," not the party's lawyer. Such **responses** must also be made under **oath**. Fed.R.Civ.P. 33(b)(1). Finally, it is clear that in answering and **signing** the **interrogatories**, Halley is testifying on matters as to which he has no personal knowledge. Such material plainly is insufficient to raise a triable issue of fact on this motion. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (unsworn statement by defendant's employee did not comply with Rule 56(e) and was thus not relied upon by defendant in summary judgment motion); *EEOC v. Clay Printing Co.,* 955 F.2d 936, 945 n. 9 (4th Cir.1992) (affidavit not based on personal knowledge provides no evidentiary support

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

under Rule 56(e)); *H. Sand & Co., Inc. v. Airtemp Corporation,* 934 F.2d 450, 454-55 (2d Cir.1991) (stating that documents submitted in opposition to **summary judgment** motion must be presented by one with personal knowledge, must be authenticated and **admissible**); *U.S. v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.,* 899 F.Supp. 974, 982 n. 4 (E.D.N.Y.1994) (statement made by person without personal knowledge "constitutes hearsay and conjecture and is insufficient to defeat a motion for **summary judgment**"), *aff'd,* 47 F.3d 1158 (2nd Cir.), *cert. denied sub nom.,* 516 U.S. 806, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995).

*5 As previously stated, plaintiff offers no other **evidence** of any instances of sexual harassment. Since plaintiff's submissions are wholly insufficient in this regard, **summary judgment** must be granted on plaintiff's hostile work environment sexual harassment claim.

(b) Sex Discrimination

Claims of sex discrimination under § 1983 employ the same burden-shifting analysis as that used in claims brought pursuant to 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). *See McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986); *Wrenn v. New York State Office of Mental Health,* 771 F.Supp. 594, 599 (S.D.N.Y.1991), *aff'd,* 962 F.2d 1 (2d Cir.1992); *see also Carrion v. Yeshiva Univ.,* 535 F.2d 722, 729 (2d Cir.1976) (noting that § 1983 provides "[n]o greater or lesser protection against discriminatory practices" than Title VII).

Under this approach, the plaintiff initially is required to establish a *prima facie* case for relief. *Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 160-61 (2d Cir.1991); *Duprey v. Prudential Ins. Co. of America,* 910 F.Supp. 879, 883 (N.D.N.Y.1996). Once the plaintiff has proved a *prima facie* case, the burden shifts to the employer to articulate a legitimate explanation for the adverse action which, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). If the employer satisfies this burden, plaintiff must then prove that such explanations are a mere pretext for discrimination. *Monette v. EDS Corp.,* 90 F.3d 1173, 1996 WL 422962 at *12 (6th Cir.1996). While the burden of persuasion remains with the plaintiff at all times, *Hicks,* 113 S.Ct. at 2747, the showing that the plaintiff must make as to the elements of the prima facie case in opposing a motion for summary judgment is "*de minimis.* " *Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 204 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

"Generally, the elements of a discrimination case are: (1) that plaintiff belonged to a protected class; (2) that she was performing her job in a satisfactory manner; (3) that she suffered an adverse employment action or actions; and (4) that such action or actions took place under circumstances giving rise to an inference of discrimination." *Reilly v. Metro-North Commuter Railroad Co.,* 1996 WL 665620, at *6 (S.D.N.Y.1996). [FN6] Defendant essentially does not dispute the first three elements of this analysis. The focus of this motion is thus whether plaintiff can establish the existence of a fact issue with respect to the fourth element: namely, whether the circumstances surrounding plaintiff's various allegations give rise to an inference of discrimination.

> FN6. These elements vary in accordance with the factual scenario surrounding plaintiff's various allegations of discrimination. *See Reilly,* 1996 WL 665620 at *6, n. 5.

*6 Count I of the Complaint sets forth six adverse employment actions, the circumstances surrounding which, plaintiff argues, give rise to an inference of discrimination. [FN7] These actions are: (1) the denial of overtime to plaintiff since at least May 1, 1993; (2) the denial to plaintiff of DWI patrols since at least May 1, 1993; (3) the denial of plaintiff's right to be a member of a collective bargaining unit since at least May 1, 1993; (4) the denial of plaintiff's right to be appointed to the Civil Service position of Police Assistant from May 28 to August 9, 1993; (5) restricting plaintiff to 35 hours per week when she became Police Assistant, while all others were allowed 40 hour work weeks; and (6) the elimination of the Police Assistant position.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

> FN7. An equal protection claim under the Fourteenth Amendment requires a showing of *intentional* discrimination. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984).

(i) Overtime/DWI Patrols

The first two of these allegations may be disposed of in short order. While plaintiff alleges that she was afforded less overtime than anyone else in 1993, and was denied DWI patrols well into that year, defendant's submissions establish otherwise. The affidavit of Cheri Martin, defendant's bookkeeper, shows that plaintiff worked 79.5 hours of overtime from January through August 1993; the next highest figure for a part-time police officer in that period is 25.5 hours. (Martin Aff., ¶ 2). Furthermore, the total number of overtime worked by part-time officers during the same period was 183.75. (*Id.*). Plaintiff's overtime hours thus comprise 43% of that figure.

Plaintiff's time sheets, submitted by defendant, reveal that she worked eight-hour DWI shifts on the following days from May through August of 1993: May 7, May 15, May 22, June 5, June 12, July 10, and August 6. (Def.Ex. Q). Given that plaintiff herself asserts that she would "normally" work about two such shifts per month, such figures hardly give rise to an inference of discrimination. (*Id.* at 53).

Defendant sets these facts forth as undisputed in its Local Rule 7.1(f) statement. Plaintiff, in her 7.1(f) statement, does not dispute these facts, nor does she offer any evidence giving rise to any factual dispute on these issues. In light of plaintiff's failure in this regard, defendant's motion for summary judgment is granted on these claims.

(ii) Denial of Rights to CBA/Civil Service/40 Hour Week

Plaintiff also raises no factual dispute as to her claims involving the denial of her right to join a collective bargaining unit, her right to be appointed Police Assistant earlier than August of 1993, and her alleged restriction to 35 hours per week. Other than mentioning such alleged acts of discrimination in her Complaint, plaintiff makes no further mention of these claims in any of the papers submitted on this motion, nor do any of plaintiff's exhibits establish (a) that she had a "right" to be a member of any collective bargaining unit; (b) that she had a "right" to be appointed to the Civil Service position of Police Assistant as of May 28, 1993; or (c) that all other full-time police employees were allowed 40 hours per week compared to her 35. Thus, plaintiff fails to even establish a *factual* basis for these allegations, not to mention her failure to offer any legal support for her contention that they were the result of intentional discrimination on defendant's part. **Summary judgment** must therefore be granted on these claims as well. [FN8]

> FN8. Once again, plaintiff relies on her attorney's answers to defendant's **interrogatories** in part to establish a factual basis for these claims. Such reliance is misplaced for the reasons discussed in part A(1)(a), *supra.* In addition, these **interrogatory** answers contain other instances of alleged discrimination, such as plaintiff's being denied attendance at a breathalyser school, and that she was denied a Civil Service position in favor of a male who ranked lower on the Civil Service list. (Pl.Ex. B, Response 6). Not only are such allegations based upon lack of personal knowledge by plaintiff's attorney, they were also not raised in the Complaint.

(iii) The December 1993 Resolution

*7 Plaintiff again fails to set forth any facts giving rise to an inference of sex discrimination with respect to the adoption of the 1994 budget which eliminated her position as Police Assistant.

> The circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, [or] preferential treatment given to employees outside the protected class ... A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position, or, more generally, upon the timing or sequence of events leading to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1997 WL 135899                                                                                                Page 7
(Cite as: 1997 WL 135899 (N.D.N.Y.))

the plaintiff's termination. *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir.1996) (citations omitted). The only circumstances which might arguably lead to an inference of sex discrimination are those alleged by plaintiff's attorney in his responses to defendants interrogatories. As noted *supra,* however, such second-hand allegations are insufficient to raise a triable issue of fact on the present motion.

Plaintiff offers nothing to dispute defendant's contention that her Police Assistant position was eliminated as a matter of fiscal policy, evidenced by documented cutbacks in both the Police Department itself as well as the Town as a whole. (See Wenz Aff. 4-7; Def. Ex. D). Furthermore, defendant asserts that the police assistant position has not been funded since January 1, 1994, and that plaintiff has not been replaced to this date. (Wenz Aff. ¶ 7). Plaintiff half-heartedly (and without evidentiary support) counters that "[t]he Police Chief has had civilian clerical support since 1994 in that a civilian dispatcher ... has been performing substantially all of the civilian functions that were previously handled by the Plaintiff." (Pl. Mem. of Law at 1). In the same sentence, however, plaintiff notes that such alleged support is being provided by a woman. *Cf. Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1239 (2d Cir.1996) ("To establish a prima facie case of gender discrimination, a female plaintiff must show that she was qualified for the position, that her employer discharged her, and that the employer sought or hired a male to replace her."). Having offered no evidence to raise a triable issue of fact with respect to the elimination of the Police Assistant job, defendant's motion for summary judgment is granted on this claim.

(c) Unlawful Classification

"The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)(citing *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920)). In the absence of a suspect classification, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the ... facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger,* 505 U.S. at 11; *see Bernheim v. Litt,* 79 F.3d 318, 322 (2d Cir.1996). Here, it is clear that the classification created by the August 1993 resolution--individuals who hold both full and part-time jobs with the Town--is not based upon "suspect" or "quasi- suspect" characteristics, i.e., race or gender. Thus, rational basis analysis applies. [FN9]

FN9. It is not clear to the Court upon what theory plaintiff rests her equal protection claim regarding the August 1993 resolution. As an alternative to rational basis analysis, plaintiff may be alleging an equal protection violation via selective enforcement. A violation of equal protection under the Fourteenth Amendment by selective enforcement arises if:
(1) the person, compared with others similarly situated, was selectively treated; and (2) ... such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.
*LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609-10 (2d Cir.1980)). Plaintiff asserts that the August 1993 resolution applied to her alone. Defendant, however, submits the affidavit of Michael Logue, the Town Assistant Water Department Superintendent. Logue asserts that shortly after being hired by the Water Department, he began working part time for the Highway Department, resulting in overtime pay for the two jobs. (Logue Aff. ¶ 2). Since passage of the August 1993 resolution, however, and as a result thereof, Logue has not worked at all for the Highway Department, and is no longer eligible for any other part- time Town position. (*Id.* ¶ 3). Plaintiff offers no evidence to show that any individual

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

similarly situated was treated differently. Thus, any claim based upon selective enforcement would necessarily fail.

*8 In the first instance, defendant argues that collateral estoppel bars plaintiff from relitigating the validity of the August 1993 resolution based upon the dismissal in state court of her Article 78 proceeding. "[A] valid, final judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand...." 1B J. MOORE & T. CURRIER, MOORE'S FEDERAL PRACTICE 411[2], at 1281 n. 1 (2d ed.1982). Under the Constitution's Full Faith and Credit Clause, federal courts must accord state court judgments the same preclusive effect that would be accorded by other courts within that state. *See National Labor Relations Bd. v. United Technologies Corp.,* 706 F.2d 1254 (2d Cir.1983); *Burgos v. Hopkins,* 14 F.3d 787, 792 (2d Cir.1994). The Second Circuit succinctly set forth the applicable two-part standard in *Burgos v. Hopkins:* (1) "[t]here must be an identity of the issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) "there must have been a full and fair opportunity to contest the decision now said to be controlling." *Burgos,* 14 F.3d at 792 (citations omitted).

Relying upon *Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986), plaintiff argues that her § 1983 claim is not barred since the state court in the Article 78 proceeding "did not have the power to award the full measure of relief sought in the later litigation." *Id.* at 278. *Davidson* indeed held that since damages for civil rights violations are not recoverable in an Article 78 proceeding, an Article 78 judgment will not bar a subsequent federal action for damages based upon the same underlying facts. *Id.* at 281-82. Plaintiff, however, confuses *claim* preclusion (or *res judicata* ) with *issue* preclusion (collateral estoppel). *Davidson* dealt only with the concept of claim preclusion, which provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus, while under the doctrine of claim preclusion "a judgment in a prior Article 78 proceeding is not a bar to a subsequent federal civil rights action, the federal plaintiff is precluded [by issue preclusion] from relitigating issues that were fully and fairly litigated and necessarily determined in the Article 78 proceeding." *Rameau v. New York State Dep't of Health* 741 F.Supp. 68, 71 (S.D.N.Y.1990) (citing *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987); *Halyalkar v. Board of Regents,* 72 N.Y.2d 261, 532 N.Y.S.2d 85, 87, 527 N.E.2d 1222 (1988)). We must therefore determine whether plaintiff's present claim that the August 1993 resolution constituted a violation of equal protection is now barred by issue preclusion.

The first question is thus whether there is "an identity of the issue which has necessarily been decided in the prior action and is decisive of the present action." *Burgos,* 14 F.3d at 792. In dismissing plaintiff's Article 78 proceeding, Justice Torraca determined that plaintiff had "set forth no proofs which might establish that [the Town] acted unlawfully or in an arbitrary or capricious manner or that its actions constituted an abuse of discretion. (Def.Ex. F.). As noted above, an equal protection claim not based on a suspect classification or infringement of a fundamental right is analyzed under that rational basis test, which provides that a government entity "may not exercise [its] authority in an arbitrary, capricious or unreasonable manner." *HBP Associates v. Marsh,* 893 F.Supp. 271, 279 (S.D.N.Y.1995); *see also Bernheim,* 79 F.3d at 323 (equal protection "is violated when the state distinguishes between individuals based on 'unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate government objective' ") (quoting *Castro v. New York City Bd. of Educ.,* 777 F.Supp. 1113, 1118 (S.D.N.Y.), *aff'd,* 923 F.2d 844 (2d Cir.1990)). Thus, in dismissing plaintiff's Article 78 proceeding, the state court necessarily decided the issue presented here: to wit, that the August 1993 resolution had a rational basis.

*9 As to the second part of the issue preclusion analysis, plaintiff has the burden to show the absence of a full and fair opportunity to litigate the issue. *See Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995) (citing *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63 (1985). Plaintiff has not only failed to meet this burden, she has entirely failed to address the issue. Moreover, the record of the Article 78 proceeding, submitted by defendant, reveals that plaintiff indeed had a full opportunity to litigate the lawfulness of the August 1993 resolution in the state court. Since

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

plaintiff is thus precluded from arguing that the August 1993 resolution lacks a rational basis, defendants motion for summary judgment on this claim is granted.

For all of the foregoing reasons, then, defendant's motion for summary judgment is granted as to counts one and two [FN10] of the Complaint.

> FN10. Count two of the Complaint essentially alleges that the actions of the Town alleged in count one were taken pursuant to a custom or policy of the defendant. *See Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). These allegations relate only to municipal liability. *Id.* Since defendant has been granted summary judgment with respect to the underlying constitutional violations, however, Count II must be dismissed as well.

(3) First Amendment Retaliation

In order for plaintiff to withstand defendant's motion for summary judgment on her retaliation claim, she first must establish that her speech dealt with a matter of public concern and that the speech was a motivating factor in the adverse employment actions taken by defendant. *Frank v. Relin,* 1 F.3d 1317, 1330 (2d Cir.1993). Plaintiff fails the latter half of this requirement. First, plaintiff offers nothing to support her allegations that she even spoke out against the way the Milazzo affair was handled. While the minutes of the PBA meetings reflect that plaintiff expressed her opinion on the issue of how the PBA should deal with the matter, nothing in the record suggests that plaintiff expressed her opinion regarding how the Police Department or the Town would or should handle the matter. In other words, plaintiff has not provided any evidence that she engaged in any relevant protected First Amendment activity, nor that any such activity motivated defendant to take action against her.

Plaintiff argues that she "has alleged that she engaged in a protected activity which was known to defendant, and that subsequent to said activities, and as a result thereof, she was terminated from her employment." (Pl. Mem. of Law at 8). Further, plaintiff points out that her burden on this motion is *de minimis.* (*Id.*). Both statements are correct, as far as they go; the allegations of her Complaint virtually are irrelevant on a summary judgment motion, however, *see* Fed.R.Civ.P. 56(c), and a plaintiff's *prima facie* burden in a sex discrimination case, while *de minimis,* is not so slight as to abrogate entirely her obligation to "set forth *specific facts* showing that there is a genuine issue for trial." *Id.* (emphasis added). Plaintiff sets forth no such facts, and thus defendant's motion for summary judgment is granted as to the third count of the Complaint.

III. CONCLUSION:

For all of the foregoing reasons, then, it is hereby

ORDERED, that defendant's motion for summary judgment is GRANTED in all respects, and the Complaint is dismissed in its entirety.

*10 IT IS SO ORDERED.

1997 WL 135899, 1997 WL 135899 (N.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works