UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BETH L. LENOBLE,                    :
                                    :
        Plaintiff,                  :
                                    :
v.                                  :    No. 3:02CV1673(DJS)
                                    :
BEST TEMPS, INC., PHOTOS            :
TEMPS, INC., and ROBERT J.          :
ROSA,                               :
                                    :
        Defendants.                 :

## MEMORANDUM OF DECISION

Plaintiff Beth L. Lenoble brings this action against defendants Best Temps, Inc. ("Best Temps"), Photos Temps, Inc. d/b/a Best Temps, Inc. ("Photos Temps"), and Robert J. Rosa pursuant to 42 U.S.C. § 1981 ("§ 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"); the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60 & 81c ("CFEPA"); and Connecticut's common law. Lenoble alleges the defendants discriminated against her in the workplace by disparaging her race, religion, and sexual orientation. Photos Temps has filed a motion for summary judgment. (Dkt. # 53). For the reasons set forth herein, Photos Temps's motion is **GRANTED.**

## I. FACTS

Through the causes of action alleged in her complaint, Lenoble seeks to hold defendant Photos Temps, which is a licensee of defendant Best Temps, liable for the torts of an agent of Best

Temps.  Best Temps functions as a headhunter of temporary personnel for employers.  Best Temps shares its industry expertise and resources with other employment agencies through licensing agreements, wherein Best Temps agrees to provide the use of its trade name and "know-how" in exchange for royalties. Photos Temps is a licensee of Best Temps, and does business under the Best Temps trade name.

Aside from the licensing agreement, Best Temps and Photos Temps have different corporate structures and ownership.  Robert Rosa formed and incorporated Best Temps, Inc. on September 28, 1995.  As owner, president, and treasurer, Rosa controls all aspects of business at Best Temps, which includes the hiring and firing of its employees.  Richard Photos formed and incorporated Photos Temps, Inc. d/b/a Best Temps, Inc. in March of 1996. Milford, Connecticut is the principal place of operation for Photo Temps.  Photos is the owner, president, and treasurer of Photos Temps.  Rosa has no ownership interest in Photos Temps. Likewise, Photos has no ownership interest in Best Temps.  In addition, neither owner holds a position as an officer, director, or shareholder in the other owner's corporation.  When considering the traditional formalities of corporate structure, Best Temps and Photos Temps are, on paper, undeniably two different business entities.

On February 22, 1996, a licensing agreement was executed between Best Temps and Photos Temps.  The non-exclusive license agreement allows Photos Temps to use the trade name, symbols, logos, and methods of the licensor, Best Temps.  A provision of the license agreement provides that "[t]his agreement does not in any way create the relationship of a joint venture, partnership or principal and agent between [Best Temps] and [Photos Temps]."

Lenoble is a New York citizen.  Rosa hired Lenoble to act as a recruiter for Best Temps at its principal place of business in Monroe, Connecticut.  Lenoble maintained this position at Best Temps between April 22, 2002 and July 11, 2002.  Before and during her period of employment at Best Temps, Lenoble was Jewish and was a lesbian.  For reasons yet to be determined by the trier of fact, Lenoble ceased to be employed by Best Temps on July 11, 2002.

## II. DISCUSSION

Lenoble brings this action pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a), Sections 46a-60 & 81c of the Connecticut General Statutes, and Connecticut's common law.  The Amended Complaint sets forth the following claims: Count One alleges a deprivation of contractual rights (resulting from racial discrimination) in violation of 42 U.S.C. § 1981; Count Two alleges a hostile and abusive work environment (workplace discrimination based on race and religion) in violation of 42

U.S.C. § 2000d-2(a); Counts Three and Four allege sexual orientation, religion, and gender discrimination in violation of Sections 46a-60 & 81c of the Connecticut General Statutes; and Counts Five through Ten seek relief available through state tort law.  Photos Temps denies liability for—and seeks summary judgment on—all ten counts for the following reasons: it was never Lenoble's employer; it had no control over any aspect of Lenoble's employment at Best Temps; the corporate defendants cannot be considered a single or joint employer, joint enterprise, or partnership; and there was no agency relationship between the two corporations. (Dkt. # 53).

A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l

-4-

Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in the light most favorable to the non-moving party.  See Bryant v. Maffucci, 923 F.2d 979, 982(2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Id.

## B. EVIDENTIARY ISSUES

Photos Temps claims that Lenoble relies upon inadmissible hearsay in her opposition papers.  Rule 56(e) of the Federal Rules of Civil Procedure governs the submission of affidavits in support of, or opposition to, a motion for summary judgment.  "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Union Ins. Soc'y of Canton, Ltd., v. William Gluckin & Co., Inc., 353 F.2d 946, 952 (2d Cir. 1965)(holding that "conclusory statements and statements not made on personal knowledge do not comply with the requirements of Fed.

R. Civ. P. 56(e) and, therefore, may not be considered").
"Hearsay is a statement, other than one made by the declarant
while testifying at trial or hearing, offered in evidence to
prove the truth of the matter asserted." Fed. R. Evid. 801(c).
"Hearsay testimony that would be inadmissible if testified to at
trial may not properly be set forth in a Rule 56 affidavit
accompanying a summary judgment motion." Spector v. Experian
Info. Sys., No. 3:01-CV-1955, 2004 WL 1242978, at *5 (D. Conn.
Jun. 2, 2004).

        Some of the evidence Lenoble relies upon is indeed
inadmissible hearsay and, therefore, should not be considered by
this court when ruling on this summary judgment motion. See
Whidbee, 223 F.3d at 71 (providing that "a district court
deciding a summary judgment motion must be provided with
admissible evidence demonstrating the truth of the non-movant's
assertions"). In an interrogatory answer, Lenoble recounts
inadmissable statements made by Jeff Soss, who was a fellow
employee at Best Temps, and Anthony Osias, who was a former
bookkeeper for Best Temps and Photos Temps. (Dkt. # 67, Ex. 2 at
10 ("While I worked for defendants Jeff Soss told me that the
companies shared policies, procedures, financing and
management."); Id. at 10-11 ("Mr. Osias said that defendant Rosa
allocated expenses betweeen the companies and had him move money
between company accounts, not according to the name on the

account, but according to convenience.  Mr. Osias said that
defendant Rosa had some of Osais'[s] expenses charged to a
defendant Photos Temps account though he nominally worked for
defendant Best Temps.")).  These statements fit the definition of
hearsay, and no exception applies to permit their admission.  As
such, these statements are excluded from evidence in this case.

The court also notes Photos Temps's arguments regarding the
authentication of certain exhibits Lenoble relies upon. (Dkt. #
73).  For the purpose of deciding this motion, however, the court
will presume that Lenoble could properly authenticate the
documents at issue at trial.

C. STATUTORY CLAIMS (COUNTS ONE THROUGH FOUR)

Lenoble, in Counts One through Four, alleges workplace
discrimination in violation of federal and state statutes.
Photos Temps avers that Rosa and Best Temps employed Lenoble at
all relevant times, and that Lenoble had no legal relationship
with Photos Temps.  Photos Temps contends that it is entitled to
summary judgment because it was never Lenoble's employer and,
therefore, cannot be held liable for workplace discrimination.

1. Title VII and CFEPA (Counts Two through Four)

Photos Temps argues that it was not Lenoble's "employer" as
that term is defined in Title VII.  If Photos Temps was not
Lenoble's "employer," then it cannot be held liable for workplace

discrimination under Title VII or CFEPA.[1]  This court uses the
single and joint employer analyses to determine whether a non-
employer has sufficient ties to a plaintiff or her employer to
impose liability for workplace discrimination under Title VII and
CFEPA.[2] See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235,
1241 (2d Cir. 1995) (adopting the four-part single employer
analysis for Title VII claims); Clinton's Ditch Coop. Co. v.
NLRB, 778 F.2d 132, 138-39 (2d Cir. 1985) (applying a five-factor
joint employer analysis to resolve a labor dispute in the
trucking industry); Peltier v. Apple Health Care, Inc., 130 F.
Supp. 2d 285, 288-90 (D. Conn. 2000) (citing Clinton's Ditch Coop
and applying the single and joint employer analyses to an age-
discrimination-in-employment claim).

---

[1]Individual liability under § 1981 attaches through
mechanisms distinct to the statute; therefore, Lenoble's § 1981
claim will be addressed separately herein.

[2]Connecticut state courts have not developed a state-
specific "employer" analysis for workplace discrimination claims
brought under CFEPA.  The Connecticut Supreme Court, however, has
endorsed the praticice of "looking to federal employment
discrimination law for guidance in enforceing [the State's]
antidiscrimination statute," Zlokower v. Comm. on Human Rights
and Opportunities, 200 Conn. 261, 264-65 (1986), and this court
has applied interpretations of analogous federal law to
discrimination claims brought under state statutes. See Pomppeii
v. Alsexander MFG., Inc., No. 3:03CV1170(RNC), 2003 U.S. Dist.
LEXIS 20317, at *4-*5 (D. Conn. Nov. 7, 2003) (applying the same
employer analysis used in Title VII claims to state claims
arising under CFEPA).  Therefore, the court will apply federal
case law to Lenoble's CFEPA claims.

a. Single Employer Analysis

Under the single employer analysis, two independent business entities are considered one employer.  A "single employer" relationship exists when "two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" NLRB v. Browning-Ferris Indus., Inc., 691 F.2d 1117, 1122 (3d Cir. 1982). The single employer standard is applicable if the "separate corporations are not what they appear to be, that they are but divisions or departments of a 'single enterprise.'" Clinton's Ditch Coop., 778 F.2d at 137 (citing NLRB v. Deena Artware, Inc., 361 U.S. 398, 402 (1960)).

Four factors are relevant in determining whether two separate entities are a single employer: the existence and degree of "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996). "The first factor, interrelation of operations, may be found where the two entities share governing board members and bylaws, as well as control of day-to-day operations." Peltier, 130 F. Supp. 2d at 288-89. (citing Owens v. American Nat'l Red Cross, 673 F. Supp. 1156, 1160-61 (D. Conn. 1987)).  "Common management, the second factor, may be evidenced by an overlap in officers or members who sit on the board of directors." Id.  "The third and

-9-

most important factor, centralized control of labor relations, is found where the entities share policies concerning 'hiring, firing, and training employees, and in developing and implementing personnel policies and procedures.'" Id. (quoting Owens, 673 F. Supp. at 1161).  The critical question—for the third element and single employer analysis—becomes, "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" Cook, 69 F.3d at 1240 (quoting Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)).  "A determination of the forth factor, common ownership, may be influenced by a finding of absolute authority over financial matters, including budgeting and payment of employees." Peltier, 130 F. Supp. 2d at 288-89.  While courts do not consider the presence or absence of any single factor to be conclusive, they do afford substantial weight to the third factor, central control of labor relations. See EEOC v. St. Francis Xavier Parochial Sch., 928 F. Supp. 29, 33 (D.D.C. 1996). The court will consider each of these factors in turn.

i. Interrelation of Operations

No single facet of day-to-day operations offers clear proof of interrelated operations.  Shared records, bank accounts, credit lines, and office space, however, are probative of interrelated operations. See Hunter v. Ark Restaurants Corp., 3 F. Supp. 2d 9, 18 (1998).

-10-

Lenoble's evidence does not support the existence of
interrelated operations.  Lenoble offers the following three
statements to support the existence of interrelated operations
between Best Temps and Photos Temps: (1) the two corporations
share an accountant, (2) a Dun & Bradstreet report states that
Photos Temps has a branch office at 477 Main St., Monroe, CT (the
main office for Best Temps), and (3) Photos was often present at
Best Temps's office in Monroe, CT. (Dkt. # 67: Ex. 2).  Although
the two corporations share the same accountant, (dkt. # 54, Ex. D
¶¶ 5, 6), the record before this court clearly demonstrates that
Photos Temps and Best Temps have maintained separate records and
bank accounts. (Dkt. # 54, Ex. D ¶¶ 10-13; Dkt. # 29 ¶¶ 3, 4;
Dkt. # 67, Ex. 5).  Also, the two corporations do not share
officers, directors, shareholders, or bylaws. (Dkt. # 54, Ex. A ¶
9, B ¶ 9, C ¶¶ 4, 7).  Even though, according to the Dun and
Bradstreet Report, Photos Temps had a "branch" in Monroe, (dkt. #
67, Ex. 6), Lenoble offers no evidence of business interaction
between the employees of the two corporations at the Monroe, or
any other, locale.[3]  Given the preservation of corporate
distinctions, the court finds that the sharing of office space,

_____

[3]Lenoble's assertion regarding the existence of shared
office space contradicts the affidavits of both corporate owners.
(Dkt. # 54, Ex. A ¶ 23, B ¶ 22).  Given the existence of a
contemporaneous Dun & Bradstreet report, the court, while viewing
the evidence in the light most favorable to Lenoble, will assume
that the two corporations shared office space at some point in
time.

in and of itself, is not a conclusive demonstration of
interrelated operations between Best Temps and Photos Temps.

### ii. Common Management

Lenoble has also failed to raise a question of fact that
would preclude summary judgment with respect to the second
factor.  As previously noted, Photos Temps and Best Temps have
independent elements of corporate structure, such as officers,
directors, shareholders, and bylaws. Id.  Also, all parties
concede that, at all relevant times, Rosa operated Best Temps,
and Photos operated Photos Temps. (Dkt. # 29 ¶¶ 10, 11; Dkt. #
54, Ex. A ¶ 19, B ¶ 8).  As a result, there are no material facts
to support the existence of common management between the two
corporations.

### iii. Centralized Control of Labor Relations

The record also cannot support a finding of the third—and
most important—factor, centralized control of labor relations.
The owner and president of Best Temps, Rosa, hired Lenoble. (Dkt.
# 29 ¶ 17; Dkt. # 67 ¶ 40).  Rosa was Lenoble's only supervisor
while she was employed at Best Temps. (Dkt. # 67 ¶ 42).  Photos
was not present when Lenoble left her employment at Best Temps.
(Dkt. # 67 ¶ 45).[4]  Throughout Lenoble's term of employment with
Best Temps, Rosa selected the businesses that Lenoble called on.

---

[4] Lenoble alleges that her employment at Best Temps was
terminated on July 11, 2002, when "Defendant Rosa shouted 'I
don't need homosexual shit – you're fired.'" (Dkt. # 29 ¶ 47).

(Dkt. # 54, Ex. F ¶ 80).[5]  Both corporations are independently responsible for all personnel matters, which include the following: compensation, discipline, supervision, hiring, and firing.  (Dkt. # 54, Ex. B ¶ 21, A ¶ 22).  Ultimately, there are no material facts to support the existence of centralized control of the labor relations for Best Temps and Photos Temps.

### iv. Common Ownership

Lenoble has also failed to raise a genuine issue of material fact with respect to the fourth factor.  Neither Rosa, nor any of his employees, ever acquired an ownership interest in Photos Temps. (Dkt. # 54, Ex. A ¶ 9).  Likewise, neither Photos, nor any of his employees, ever acquired an ownership interest in Best Temps.  (Dkt. # 54, Ex. B ¶ 9).  Both corporations maintain separate payrolls and budgets (Dkt. # 54, Ex. A ¶¶ 19, 30, B ¶¶ 19, 26, D ¶ 12).  Since there are no indicia of common ownership between Best Temps and Photos Temps, no genuine issue of material fact exists on the final element of the single employer analysis.

### b. Joint Employer Analysis

Under the joint employer analysis, two separate business entities can be held independently liable for workplace discrimination if both simultaneously exercise control over the

---

[5] In her affidavit, Lenoble states that Rosa directed her to call on customers in the area serviced by Photos Temps—without Photos's consent. (Dkt. # 67, Ex. 2).  This isolated occurrence, standing alone, does not support the existence of centralized control of labor relations.

same workforce or employee.  "[I]n a 'joint employer' relationship, there is no single integrated enterprise.  A conclusion that the employers are 'joint' assumes that they are separate legal entities, but that they have merely chosen to handle certain aspects of their employer-employee relationship jointly." Clinton's Ditch Coop., 778 F.2d at 137 (citing Browning-Ferris, 691 F.2d at 1122).  Evidence of immediate control over employees is the hallmark of joint employer status. Id. at 138.  A plaintiff may prove that two distinct business entities are joint employers by showing that both companies  "(1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." AT&T v. NLRB, 67 F.3d 446, 451 (2d Cir. 1995).[6]

    Lenoble cannot, as a matter of law, prove that Photos Temps and Best Temps were her joint employers.  Rosa hired Lenoble, and he was the only representative of either corporate defendant present when Lenoble's employment ended at Best Temps. (Dkt. # 29 ¶ 17; Dkt. # 67 ¶¶ 40, 42).  Also, Lenoble has not presented any evidence to show that Photos Temps had the ability to hire or fire Best Temps employees.  Further, Photos Temps and Best Temps

---

    [6]The fifth factor, the collective bargaining process, is inapplicable here.

maintain independent disciplinary procedures, payroll records, and insurance programs. (Dkt. # 54, Ex. A ¶ 22, B ¶ 21; Dkt. # 67 ¶¶ 29, 32). Lenoble has not presented any evidence indicating that Photos Temps maintained the time sheets for Best Temps employees. Finally, Lenoble admits that Rosa was her supervisor, (dkt. # 67 ¶ 43), and nothing in the record before the court lends support to the conclusion that Photos Temps occupied the role of supervisor for Best Temps employees. Ultimately, Lenoble's Title VII and CFEPA claims fail under the joint employer analysis because she has failed to demonstrate Photos Temps had immediate control of Best Temps employees; therefore, an issue worthy of trial is absent.

Photos Temps and Best Temps cannot be considered a single or joint employer. As a result, the court agrees with the Photos Temps that summary judgment is warranted on Counts Two through Four of the Amended Complaint.

### 2. 42 U.S.C. § 1981 (Count One)

Lenoble's claim under § 1981 is based on the same facts as her Title VII and CFEPA claims for workplace discrimination. In Count One, Lenoble claims that her "workplace was permeated with discriminatory intimidation, ridicule, and insult which was sufficiently severe and pervasive to alter the conditions of [her] employment." (Dkt. # 29 ¶ 59). The analyses used for Lenoble's Title VII claim are inapplicable here because § 1981

has several distinguishing characteristics. <u>See</u> <u>Tomka v. Seiler</u>
<u>Corp.</u>, 66 F.3d 1295, 1316-17 (2d. Cir. 1995). Specifically,
Title VII claims are limited to discrimination in the workplace,
while § 1981 is applicable to a broad range of contractual
relationships. <u>See</u> <u>Sheppard v. Dickstein, Shapiro, Morin &</u>
<u>Oshinsky</u>, 59 F. Supp. 2d 27, 33 (D.D.C. 1997); <u>Santiago v. City</u>
<u>of Vineland</u>, 107 F. Supp. 2d 512, 541 (D.N.J. 2000). Also, the
language of Title VII makes it clear that only "employers" are
liable for acts of workplace discrimination, 42 U.S.C. §
2000e(b), whereas the same limitation cannot be found in § 1981.
Therefore, "Section 1981 . . . provides for individual liability
on the part of non-employers." <u>Tekula v. Bayport-Blue Point Sch.</u>
<u>Dist.</u>, 295 F. Supp. 2d 224, 232 (E.D.N.Y. 2003). The court finds
that Lenoble has failed to present any evidence to demonstrate
any incidents where Photos Temps used race, or anything else, in
manner that interfered with her employment at Best Temps.

To survive summary judgment on a § 1981 claim, a plaintiff
must provide facts that support each of the following elements:
"(1) the plaintiff is a member of a racial minority; (2) an
intent to discriminate on the basis of race by the defendant; and
(3) the discrimination concerned one or more of the activities
enumerated in the statute." <u>Mian v. Donaldson, Lufkin & Jenrette</u>
<u>Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993). The enumerated
activity Lenoble claims was infringed is the right to "make and

-16-

enforce contracts." 42 U.S.C. § 1981(b).[7]  Racial discrimination
or harassment that affects employment contracts falls within the
purview of § 1981.  See Rivers v. Roadway Express, 511 U.S. 298,
304 (1994); Whidbee v. Garzarelli Food Specialties, Inc., 223
F.3d 62, 72 (2d Cir. 2000).  To prevail on a workplace harassment
claim under § 1981, Lenoble "must show not only severe or
pervasive harassment but also 'a specific basis . . . for
imputing the conduct that created the hostile environment to the
employer.'" Whidbee, 223 F.3d at 72 (quoting Van Zant v. KLM
Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)).  Finally,
individuals may be held liable under § 1981, but the "plaintiff
must demonstrate 'some affirmative link to causally connect the
actor with the discriminatory action.'" Id. (quoting Allen v.
Denver Pub. Sch. Bd., 928 F.2d 978, 983 (10th Cir. 1991)).

     Lenoble's § 1981 claim does not present a triable issue
because one of the three requisite elements has no support in the
record before this court.  The first element of a § 1981 claim is
satisfied because Lenoble is Jewish, (dkt. # 29 ¶ 3), and Jews
are a distinct race for § 1981 purposes. See Singer v. Denver
School Dist. No. 1, 959 F. Supp. 1325, 1331 (D. Colo. 1997)
(citing Shaare Telifa Congregation v. Cobb, 481 U.S. 615, 618

---

     [7] "For the purpose of this section, the term 'make and
enforce contracts' includes the making, performance,
modification, and termination of contracts, and the enjoyment of
all benefits, privileges, terms, and conditions of the
contractual relationship." 42 U.S.C. § 1981(b).

(1987)).  Likewise, if this court assumes for the sake of this
analysis that Lenoble's allegations—with regard to Rosa's
repeated racial slurs[8]—are true, then the third element is also
satisfied because Lenoble's contractual rights could be affected
by this kind of pervasive racial discrimination in the workplace.
Lenoble's § 1981 claim fails because there is no evidence to
support the second element, an intent to discriminate.  There are
no facts to support the conclusion that Photos Temps, or any of
its agents, acted in a racially discriminatory manner toward
Lenoble.  Likewise, there are no facts that demonstrate Photos
Temps was in a position to control the actions of Rosa, who was
the president and owner of its corporate licensor.  As a result,
summary judgment for Photos Temps on Count One is appropriate
because Lenoble has failed to produce any evidence to support a
causal link between Photos Temps and the alleged racially
discriminatory conduct of Rosa.

    Judgment shall enter for Photos Temps on Counts One through
Four of the Amended Complaint.  Lenoble has failed to provide
facts indicating that Photos Temps could be held liable under §
1981, Title VII, and CFEPA for the actions described in the
Amended Complaint.  As a result of these factual inadequacies,
this court finds an absence of a genuine triable issue, and

---

[8] Lenoble claims that Rosa consistently used racial slurs
(e.g., "Jew down," "Jew boy," "kike," and "the kike's a dyke") in
her presence. (Dkt. # 29 ¶¶ 29-33).

summary judgment for Photos Temps is warranted on Counts One through Four.

### D. STATE COMMON LAW CLAIMS (COUNTS FIVE THROUGH TEN)

In Counts Five through Seven of her Amended Complaint, Lenoble claims that Rosa committed the following torts: intentional infliction of emotional distress (Count Five), negligent infliction of emotional distress (Count Six), and assault (Count Seven). (Dkt. # 29 ¶¶ 97-105). The remaining counts of Lenoble's complaint attempt to impose vicarious liability on Photos Temps for Rosa's actions pursuant to the common law doctrines of respondeat superior (Count Eight), joint enterprise (Count Nine), and agency arising from a partnership (Count Ten). (Dkt. # 29 ¶¶ 106-16). For the reasons set forth herein, Lenoble's tort claims against Photos Temps fail as a matter of law.

### 1. Respondeat Superior

Lenoble has failed to raise any facts to support imposing vicarious liability on Photos Temps by respondeat superior.[9] "Under the doctrine of respondeat superior, [a] master is liable for the willful torts of his servant committed within the scope

---

[9] Actually, the respondeat superior claim was not made against Photos Temps in the Complaint or Amended Complaint. Lenoble first directs this claim against Photos Temps in her opposition papers. (Dkt. # 66 at 13-15). Because it lacks merit, the court will nevertheless address this claim as though it had been set forth in Lenoble's pleadings.

of the servant's employment and in furtherance of his master's business." Pelletier v. Bilbiles, 154 Conn. 544, 547 (1967). "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment . . . . Unless [the agent] was actuated at least in part by a purpose to serve a principal, the principal is not liable." A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 209-210 (1990). Typically, "it is the function of the jurors to determine from the facts before them whether, under this test, a servant was acting within the scope of his employment." Brown v. Housing Authority, 23 Conn. App. 624, 628 (1990) (citing Bradlow v. Am. Dist. Tel. Co., 131 Conn. 192, 195 (1944)). A question of law, however, arises when the agent is clearly outside the scope of his authority. See Pepperidge Farm, 216 Conn. at 207; Bradlow, 131 Conn. at 195; Gutierrez v. Thorne, 13 Conn. App. 493, 499 (1988); Brown, 23 Conn. App. at 628.

Lenoble's respondeat superior claim against Photos Temps fails on two fronts. First, the only demonstrated relationship between Rosa (president of Best Temps, the licensor corporation) and Photos Temps (licensee corporation) is created by their license agreement. (Dkt. 54, Ex. A, License Agmt. ¶ 22).[10] As a

---

[10] In section three, *infra,* the court will address why Lenoble has failed to demonstrate an agency (master-servant) relationship between Rosa and Photos Temps (or Photos).

-20-

result, the primary characteristic of a respondeat superior claim, an agency (master-servant) relationship, is not present. Second, Rosa's alleged workplace discrimination toward Lenoble benefitted the business interests of no one, let alone Photos Temps.  Even assuming, *arguendo*, that the requisite master-servant relationship existed, Lenoble must show that Rosa's alleged discriminatory actions somehow furthered Photos Temps's business interests.  Assuming that Lenoble's allegations with respect to Rosa's actions are true, the tier of fact could not find that his gratuitous insults and threatening gestures furthered any legitimate business purpose. (Dkt. # 29 ¶¶ 24-58). Because Lenoble's claim is devoid of support for either aspect of respondeat superior liability, the court grants Photos Temps's motion for summary judgment on Count Eight.

## 2. Joint Enterprise

Lenoble, in Count Nine, alleges that Photos Temps and Best Temps formed a joint enterprise.  Within the same count, Lenoble contends that the torts allegedly committed by Rosa were for the benefit of this joint enterprise and, as a result, Photos Temps is vicariously liable.  Lenoble has not presented facts that support the existence of a joint enterprise; therefore, a genuine triable issue does not exist, and summary judgment for Photos Temps is appropriate.

A joint enterprise, also called joint venture or joint adventure, exists "where two or more parties combine their property, money, effort, skill or knowledge in some common undertaking . . . ." John Doe v. Yale Univ., 252 Conn. 641, 672 (2000) (citing Roberts v. Weiner, 137 Conn. 668, 671 (1951)). "The relationship between contracting parties cannot amount to a joint [enterprise] unless the parties so intend." Electronic Associates, Inc. v. Automatic Equip. Dev. Corp., 185 Conn. 31, 35 (1981). "Generally, joint ventures relate to a single transaction, whereas partnerships exist for a general business." Doe, 252 Conn. at 673 (citing 1 R. Rowley, Partnerships § 6.1, p. 39(2d ed. 1960)). In essence, unless the parties intend to temporarily combine their resources for a common goal, the business form they create cannot be considered a joint enterprise.

Lenoble cannot, as a matter of law, prevail on Count Nine because there is no evidence of an intent to form a joint venture. Photos Temps and Best Temps clearly stated their intentions in a license agreement at the beginning of their business relationship. (Dkt. # 54, Ex. A, License Agmt. ¶ 22). It states, "[t]his Agreement does not in any way create the relationship of joint venture . . . between Licensor and Licensee." Id. Nothing that has been brought to the court's attention—including the alleged activities and business practices

-22-

of each corporation's president—supports a conclusion contrary to
the corporations' clear intention not to create a joint
enterprise.  Summary judgment for Photos Temps on Count Nine is
appropriate because Lenoble has failed to provide facts to
support an intention to create a joint enterprise.

### 3. Partnership

In Count Ten, Lenoble claims that Photos and Rosa were *de
facto* partners in a recruitment business.  Lenoble further claims
that Photos and Rosa used their companies, Photos Temps and Best
Temps, to further the interests of their partnership; therefore,
Lenoble posits that Photos Temps should be vicariously liable for
the torts of its alleged agent.  Lenoble has not presented facts
that support the existence of a partnership; as a result, a
genuine triable issue does not exist, and summary judgment for
Photos Temps is appropriate.

Connecticut's legislature has adopted and codified the
Uniform Partnership Act, which provides, in pertinent part, that
"the association of two or more persons to carry on as co-owners
a business for profit forms a partnership, whether or not the
persons intend to form a partnership." Conn. Gen. Stat. § 34-
314(a) (2003).  "In determining whether a partnership is formed,
. . . [a] person who receives a share of the profits of a
business is presumed to be a partner in the business . . . ." Id.
§ 34-314(c)(3).  Also, "a mutual agency relationship is[,

-23-

generally,] an essential element of a partnership." <u>Davies v.
General Tours, Inc.</u>, 63 Conn. App. 17, 20 (2001) (citing <u>Travis
v. St. John</u>, 176 Conn. 69, 72-73 (1978)).

"The question of whether a partnership exists between
particular persons is a mixed question of law and fact. This
means that what constitutes a partnership under established facts
is a question of law for the court, but the existence of the
facts necessary to bring the relation within the tests of
partnership, or the determination whether a partnership exists
under the evidence and the inferences reasonably drawn from the
evidence, is a question of fact for the jury." 59A Am. Jur. 2d
Partnership § 182 (2003). In other words, "where the facts are .
. . susceptible of only one reasonable inference, the question of
whether a partnership exists between particular persons is one of
law for the court." <u>Id.</u>[11]

Even when the court considers the facts in the light most
favorable to the Lenoble, summary judgment is warranted because
the plaintiff's facts do not, as a matter of law, support the

---

[11] <u>Cf. Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d
438, 445 (2d Cir. 1980) (quoting <u>SEC v Research Automation Corp.</u>,
585 F.2d 31, 33 (2d Cir. 1978)) (providing that the party
opposing summary judgment "'may not rest upon mere conclusory
allegations or denials' as a vehicle for obtaining a trial," but
instead "must bring to the district court's attention some
affirmative indication that his version of relevant events is not
fanciful"); <u>Anderson</u>, 477 U.S. at 252 (providing that to preclude
a summary judgment order, "there must be evidence on which the
jury could reasonably find for the [non-moving party]").

existence of a partnership between Rosa and Photos.  First, there
is no indication that Rosa and Photos shared the profits of their
respective corporations.  Lenoble claims that Best Temps and
Photos Temps "commingled" bank accounts, (dkt. # 68, ¶ 32), but
the documents Lenoble relies on to support this claim, which were
generated by the Monroe County Police Department, clearly show
that the two corporations maintained separate bank accounts.
(Dkt. # 67, Ex. 3-5).  Second, the record is also devoid of facts
to support a relationship of mutual agency between Rosa and
Photos.[12]  On the contrary, the only evidence that squarely
addresses this element of a partnership, the license agreement
between Best Temps and Photos Temps, states that the "Licensee
shall not act or attempt to act or represent itself directly, or
by implication, as agent for Licensor . . . ." (Dkt. # 54, Ex. A,
License Agmt. ¶ 22).  To date, Lenoble has proffered no evidence
that supports a conclusion that Rosa and Photos abandoned the
agency limitations in their license agreement and empowered each
other to act on behalf of a partnership.  As a result, the facts
before the court support only one reasonable conclusion: a

---

[12] "The three elements required to show the existence of an
agency relationship include: (1) a manifestation by the principal
that the agent will act for him: (2) acceptance by the agent of
the undertaking; and (3) an understanding between the parties
that the principal will be in control of the undertaking."
Schoonmaker v. Brunoli, Inc., 365 Conn. 210, 230 n.21 (2003)
(citing Hallas v. Boehmke & Dobosz, Inc., 239 Conn. 658, 673
(1997)).

partnership did not exist between Rosa and Photos.  Therefore, summary judgment for Photos Temps on Count Ten is appropriate.

### III.   CONCLUSION

For the reasons stated herein, Photos Temps's motion for summary judgment (dkt. # 53) is **GRANTED**.  Judgment in favor of Photos Temps on all counts of the Amended Complaint shall enter forthwith.


So ordered this 14th day of January, 2005

**/s/DJS**

                _____

**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**